## SIDEWALK IMPROVEMENTS AND BIDS THEREFOR.

[Circuit Court of Summit County.]

### Z. T. TROWBRIDGE ET AL V. VILLAGE OF HUDSON ET AL.

Decided, October 27, 1902.

*Sidewalks—Construction of, under Section 2330b—Not Dependent Upon Certificate that Money is in the Treasury—Discretion of Counsel in the Acceptance of Bids.*

1. The construction of sidewalks under Section 2330b is not dependent upon compliance with the requirement of Section 2702 (Burns Law) that no contract involving the expenditure of money shall be entered into by a municipal corporation without a certificate that the amount necessary to meet the expense of the improvement is in the treasury and not otherwise appropriated.

2. In awarding a contract for the construction of sidewalks, the bids received are not competitive and the counsel is not bound to accept the lowest bid; and the discretion of counsel where exercised in good faith in awarding such a contract can not be interfered with by the courts.

CALDWELL, J.; HALE, J., and MARVIN, J., concur.

The plaintiffs bring this action in behalf of the village of Hudson to prevent the village from constructing sidewalks in a manner, as they claim, different from that provided by the statute.

The village took action under Sections 2330b and 2330c, Revised Statutes, to construct sidewalks on certain streets in the village of Hudson. On July 9, 1901, a preliminary resolution declaring it necessary to provide stone walks for the village, was passed by the council, and, at the same meeting, another resolution was passed and the mayor of the village was instructed to call a special election for the purpose of submitting to the electors of the village the question of whether bonds should be issued to meet the expense of constructing the walks. On July 31, 1901, at a special meeting of the council called for that purpose, a resolution was adopted providing for the holding of a special election on Tuesday, August 13, 1901, at which election the question of issuing $7,000 worth of bonds for sidewalk improvements was submitted

to the electors, and at which election the majority of the electors of the village voted in favor of issuing the bonds.

At a meeting of the council on the fourth of January, 1902, a general sidewalk ordinance was adopted by the council and thereafter the clerk advertised for bids for furnishing stone and building of stone sidewalks in the village; the bids to be in by twelve o'clock noon on Wednesday, July 2, 1902. Bids were received in response to this notice, and the notice was duly published. At a meeting held July 12, 1902, the bids were opened and taken up in their order by resolution duly passed. The bids of Bernard, Stocker & Slaughter, and Paul & Henry were rejected. The bid of D. A. Ely was accepted. On July 14, 1902, a contract was entered into, signed by the mayor and clerk, with Ely, as provided by law. On July 28, 1902, this action was begun in the court of common pleas to restrain the village and Ely from entering into the contract and also from carrying out the same.

The first question to be considered is: Is the contract between the village of Hudson and Ely illegal and void because the clerk did not certify to the council that the money required for the contract was then in the treasury to the credit of the fund from which it was drawn, and not appropriated for any other purpose? This question is determined by determining whether that section applies to the matter of building sidewalks as under the provisions of the statute under which the council acted in this case.

Section 2330b, Revised Statutes, provides how the expense of constructing sidewalks is to be met, and authorizes the council to issue bonds of the village; and further provides the "bonds may be sold for not less than their par value and the proceeds applied to the construction of such sidewalks, or the council may use the bonds at their par value in payment of contractors without advertising for their sale. And the statute further provides that any property owner may elect whether he or she desires to pay cash for their improvement or have it placed upon the tax duplicate as in such statute provided; and, if any person elect to pay cash and he or she refuses to do so within thirty days after the completion of the work, then the clerk shall certify the amount to the auditor together with the interest due thereon as

646    CIRCUIT COURT REPORTS—NEW SERIES.

Trowbridge et al v. Village of Hudson et al. [Vol. III, N. S.

provided. It clearly appears from the statute itself that the amount necessary to complete the work could not be known until the work was completed.

Section 2702, Revised Statutes, in our opinion, does not apply to cases where the work to be done is not to be paid for in cash but is to be done on credit (*Cincinnati* v. *Holmes,* 56 Ohio St., 104). It clearly appears from this case that the object of the Section No. 2702 is to restrain the officers of a village or any municipality in fixing an indebtedness on the corporation without any treasury to meet it; and where a statute provides for bonds being issued upon the election of the electors of the corporation, the statute has no place.

Section 2330*b,* Revised Statutes, aside from authorizing the making of a particular kind of improvement, provides the mode and manner in which the funds are to be raised and defray the cost and expenses of it. That being true, the statute itself contemplates that the money is not in the treasury but is to be raised upon the issuing of bonds upon which question the electors themselves vote. And hence, as we hold, Section 2702, Revised Statutes, has no application to the case under consideration.

The second contention on behalf of plaintiffs is that the council had no authority to reject the bids of all the contractors except that of Ely and award the contract to him. The latter part of this section (above referred to) is "the council may reject any or all bids." But it is claimed that any provision found in this chapter of the statutes on this subject is applicable to this case; and the plaintiffs to make out their case go back to a former section and endeavor to make it apply to the case at hand. If no provision was made in the section itself, it might be true that former sections might apply, but where the section itself provides what the council may do with the bids, it must be held that it was the *intention* of the Legislature that that provision should govern and not the provision found in former sections of the statute. The statute provides for the bids being on file ten days before the contract is awarded, and provides that all bids shall designate the material proposed to be used. These provisions were made with the object or purpose of giving the council sufficient time before the awarding of the contract to investigate

the kind of material each bidder proposed to use, in order that it might select not only the *kind* of material but the *best* material. The *intent* of the statute is that the council may advertise for bids for either stone or cement or both, and after the bids are in and the council learns the prices and the kinds of material that is proposed under the prices, the council may then select the kind of material it will use and the quality of that kind, and then select the bid that complies with that quality and kind; and, when the statute gives authority "to reject any and all bids," it means what it says, may reject the lowest as well as the highest, may reject any bid, may reject all but one; that one may be the lowest in price for the material selected and the quality of material selected. The one that they select may be the highest in expense but best in quality, and, in the end, the cheapest to the village. This statute was not intended, however, to give the authorities of a municipality power to act corruptly and accept bids that would be greatly to the disadvantage of the village, through motives of fraud or corruption. The intention of this statute brings it clearly within the case of *The State* v. *Board of Ed.*, 14 C. C., 15. There it was held that where a board of education advertises for bids for constructing a heating plant for a school building, the board is not bound to accept the lowest bid; that bids in such a case are not competitive; that many things besides price enter into the determination as to which would be the better system.

So, in *this* case, the statute reserves the right to the village authorities to reserve their determination of the kind of walk it will put down, until *after* the bids are opened and the kind of material selected where different qualities of material appear in the different bids.

Under such facts it is clear that the Legislature intended that when the bids are opened, the kind and quality of material is selected, that any bid that meets the requirement of the selection may be accepted and it need not necessarily be the lowest in actual figures.

In *McClain* v. *McKisson*, 15 C. C., 517, which is affirmed in the Supreme Court (*McClain* v. *McKisson*, 54 Ohio St., 673), it was there determined that the judgment of the trustees of the

water-works board of the city of Cleveland as to the liability of the lowest bidder is final. Courts can not interfere with that option or decision of the council once exercised.

But, notwithstanding this matter is left largely, if not wholly and entirely, to the option of the village authorities, yet we received testimony as to which of these bids was the lowest, it being contended by plaintiffs that there was one bid that was lower than the bid accepted, but, after receiving that testimony, the amount of the different kinds required is left in such uncertainty that the court is unable to say that the bid not accepted is lower than the one accepted. Then, too, there was a difference in the quality of the stone, and the evidence before us clearly shows that the Peninsula stone is a better stone than the Independence stone; it is less subject to changes by action of water and air, less liable to split, and has much less of iron in it. And we see nothing in this evidence to indicate that the council did not act in the utmost good faith in awarding the contract to the defendant to whom it did award it; and there is evidence here in the case to show that the action is brought largely, if not wholly, in the interests of another stone company.

We find no reason under the law and evidence of this case why the restraining order asked for should be granted, and the plaintiff's petition is dismissed.

*A. S. Cole* and *I. H. Phelps,* for plaintiffs.
*Grant & Sieber,* for defendants.